The opinion of the Court was delivered by,
WhitNEB, J.
The merits of this case, as presented on Circuit, are in no way involved by the present motion.
The battery of which the plaintiff complained had occasioned the loss of an eye, and the jury returned a verdict for thirty dollars. This appeal rests on the refusal of the Judge on Circuit to increase the damages, after verdict, on motion of plaintiff’s counsel, super visum vulneris.
This Court has been urged by a very learned and inge *174 nious argument, to administer a remedy never, so far as we are informed, adopted by the Courts in tbis country. Not a single case has been found in any book of American Reports in support of tbe present motion, notwithstanding the great research displayed by counsel. Neither has there been for a period of more than a century any recognition of the rule by any adjudged case in England to which we hake been able to procure access. It is true modern text writers, in brief paragraphs, allude to this peculiarity as appertaining to the action of mayhem; and Mr. Christian, in a note, 3 Black. Com. 121, states the point fully, that “ a remarkable property peculiar to the action for a mayhem is deemed to exist,' viz.: that the Court in which the action is brought have a discretionary power to increase the damages, if they think the jury at the trial have not been sufficiently liberal to the plaintiff; but this must be done super visum vulneris, and upon proof that it is the same wound concerning which evidence was given to the jury.” — The same ’principle is stated in Bul., N. P., 21, and Steph., N. P., 225, each deriving authority from the same sources.
Whatever reason may have existed heretofore to justify this peculiarity, in cases sounding in damages, we would be wholly at fault to deduce a rule akall consistent with modern practice.
In the last case at Lent Assizes, in 1742, and referred to by Christian, Brown vs. Seymour, 1 Wils., 5, the application was refused, though the Judge said, there was no doubt of the rule. In the case of Cook vs. Beal, 1 Raym., 176, I think in 1696, the Court resolyed, “ 1st, That if a wound be apparent, though not a mayhem, an eye injured, not out, but wound visible;” 2d, “ For loss of nose, though not a mayhem,” or 3d, “If a grievous wound," the Court may increase the damages. In Smallpiece vs. Bockenham, referred to in Buller, it seems witnesses and jurymen were examined, who all said that no evidence was given that any blow had been *175 inflicted upon tbe eye, or that tbe party bad lost an eye by tbe battery ; and for tbis reason tbe Court would not increase tbe damages “for new evidence ought not to be given, for tbis is a censure on tbe first verdict and a correction of it.”
Tbe question before tbe Court is one purely of damages;' and by what standard could a Judge remodel tbe verdict ? Under tbe Mosaic Law there was a rule: “ Eye for eye, tooth for tooth, band for band, foot for foot,” but under our present dispensation no such law of retaliation prevails. Tbe legitimate object of tbe proceedings in our Courts of justice • is at once to make reparation to tbe injured party, and to deter others from tbe like. "We have no standard value of an eye; and hence, according to tbe cases, in awarding damages, there must be consideration of tbe nature, quality, and degree of tbe wrong done. For centuries tbe wit of jurists has been taxed to settle tbe province of judges and juries; and though not yet clearly defined in every conceivable case, much progress has been made. Damages, strictly speaking, are a compensation given by tbe jury for an injury or wrong sustained by tbe complaining party before action brought: Co. Lit., 257. Tbe quantum of damages being in most cases intimately blended with questions of fact, must have been generally left with tbe jury — Sedg. Dam., 21; but, says tbe same author, tbe limits of their power were not at first as clearly defined as they have become in later days. In tbis course of development we find, in Poll’s Abr. 11, p. 703, it said, “tbe • jury are chancellors, and they can give such damages as tbe case requires in equity,” whilst again it is said, “tbe old books are full of cases where, on judgment by default, and even on demurrer, tbe Gourt themselves fix tbe amount of damages, and the remains of tbis is seen in the power exercised by tbe English Courts in cases of mayhem.”
Other facts appear in our judicial history, illustrating tbe point under consideration, as we trace tbe gradual establishment of our practice as settled, at tbis day.
*176 In tbe earlier cases, tbe Courts refused to interfere in granting new trials on account of excessive damages; 2 Mod., 150; Comb., 357; or for smallness of damages, 2 Stra. 941, tbougb in eacb a different rule obtained, sparingly exercised. 1 T. R., 277; 7 T. R., 529 ; 2 Barn., 354; 2 Tidd, 916.
Tbe Constitutions adopted by the different States of this Union, as well as tbe'whole current of legislation and adjudication, demonstrate tbe great jealousy of tbe American people on the subject of jury trial. So universally regarded as a great palladium in England and America, we may well be cautious of any innovation, tbougb tbe same sentiment should equally guard tbe improvement which timé and experience have engrafted on our judicial proceedings. Our reverence for tbe common law must have its just limit, and we may well hesitate to adopt any principle not recognized for tbe past hundred years. Tbe trial by jury has taken tbe place of other forms once in favor, and tbe judgment of a panel of twelve men has- been incorporated as an indispensable element in tbe judicial administration of tbe country. Our notions may well be pronounced inveterate as to this mode of securing rights and redressing wrongs.
At this day we may lay it down as settled, that in all cases sounding in damages, these damages are to be assessed by tbe jury, under tbe authority of tbe Court, and. not by tbe Court independently of tbe jury; in all cases of vindictive damages¿^ejmOTnt_mustjiepen.(LQn-.tbe»aaun.d.Ei§cretion of the jury. Hence, according to a series of adjudged cases, where- there is no rule of law regulating the assessment of damages, and tbe amount does not depend on computation, tbe judgment of tbe jury, and not the opinion of the Court, is to gmmrnTWFEe principle is familiar, and scarcely needs a reference. 16 Pick. 541; 1 Wash. 142; 2 Bail. 252 ; Id. 408.
- This rule in no way conflicts with tbe practice of again submitting a case to tbe judgment of another jury in extreme cases, when tbe verdict is extravagant or trifling.
*177 Tbe question therefore recurs in such a case as tbe present, wbat legal rule exists whereby to measure the damages and dispense with tbe judgment and sound discretion of a jury? However conclusive tbe argument of counsel on tbe subject of tbe transfer of certain powers exercised and distributed by tbe Courts of England to tbe law Judge in South Carolina, and however a Court, organized as ours and charged with tbe administration of tbe common law, might have been impressed a century ago by tbe doctrines and authorities now urged and relied upon ; yet looking as we must to the long sleep into which this practice, at best not very clearly defined, has fallen in tbe mother country, and still more to tbe fact that it has never been transplanted in our soil, and is now wholly incongruous with our usages and institutions, this Court has not seen its way to tbe conclusion urged. Other and better rules of. practice, efficient and satisfactory, have been adopted, in committing that class of cases sounding in damages to tbe jury, under tbe supervision of tbe Court, and relying on tbe proper corrective against mistake, ignorance, prejudice, and caprice, by granting new trials when tbe damages are excessive or nominal. I may add that it would be hazardous, inconvenient, and to some, extent subversive of our judicial machinery, to attempt this retrograde, and perhaps would justly subject this Court to a charge of judicial usurpation.
Tbe motion to increase tbe damages is refused.
O’Neall, Wardlaw, Withers, Glover, and Munro, JJ., concurred.

Motion refused.